Okay, we'll now hear 21-8054, U.S. v. Jackson. You know, I'm having a little trouble. My right eye is a little sore, so maybe I'm just looking very quizzical. If I want to ask a question, before I let you ask a question, I'll just ask the question, so you don't have to worry about it. Mr. Smith? Grant Smith with the Federal Public Defenders, appearing for Brad Jackson. I want to be very intentional to address both issues in this case, starting with the issue surrounding the factual basis. Mr. Jackson's factual basis was insufficient because it established that he legally transported firearms, not that he illegally possessed firearms. Well, can't you possess something while you're transporting it? Absolutely, and as the Flores decision from the Fifth Circuit points out, there will be a lot of factual overlap between these cases. The key distinction is whether or not while you're transporting, if it's coupled with the intent to sometime down the road exercise direct physical control over those objects. What do you mean down the road? Why isn't it enough to have that intent right now? I want to make sure that these weapons get to their destination. I'm exercising control over them. What's wrong with that? No, that would be transportation. Why would that not be possession? I take something from Judge Bacharach, and I'm going to deliver it to Judge Ide, and I'm controlling them to get there. I'm transporting them. Why am I not also possessing them? Because that would mean that transportation and possession would be synonymous. There would never be the case, then, where you would transport but not simultaneously possess. Do you mind if I interject? We just went through that. Go ahead. You may have to mediate. No, but let me test that. So what if I am a driver for Remington, and I have a bunch of Remington rifles in the back cabinet, and it's locked, and I don't have the key to that, and I'm transporting those in a semi from New York to California. I don't have access to those. There's no question that I don't have possession of those, but I would be transporting those. Okay, so that would be a crystal example that you would have transportation, but you certainly would have no argument about constructive possession. I don't have constructive possession. Now, I have a Remington rifle, and I am the only person in the car, and I've got it in my console, and I have my hand on the Remington as I'm driving it from my office to my house, and I'm transporting it, but there's no question that I also have possession of it. And you have all sorts of indictments where there are interrelated facts that there are distinct charges. I mean, you would be the first to acknowledge that, I think, that there are certain facts that would be a part that comes up in the Blockburger test all the time. So I'm still stuck on Judge Hartz's question. Why would the fact that they are distinct crimes, possession and transportation, mean that you couldn't have the transportation when you were the sole occupant of the vehicle, and have access, you're the only one with access to those two Bellini rifles, why you couldn't be guilty of both transportation and possession? Yes, to unpack that a little bit, I guess, please. With constructive possession, you do have to have both the ability and the intent to exercise dominion and control of the firearm. So your hypothetical with the locked tractor trailer would remove the potential for the ability to exercise control, and also probably the intent to exercise control, because it would be an impossibility. I think as the Flores case points out, being the sole occupant of the vehicle, having the firearm somewhere close by, not in actual possession, that's evidence of an intent to exercise dominion and control, direct dominion and control over that firearm. But it's not conclusive proof that it… Well, you don't have to… Rule 11 doesn't require conclusive proof. Well, you do here, because he denied an intent. Say that he had said, yes, I admit… He didn't. He said he was taking it to these other people. So he's exercising control until he delivers it. No, he's exercising control over the truck. He's not exercising dominion and control over the firearm. He said he wanted to take these weapons to those people. That's what he was doing. If he takes a trip, and he's acting as a delivery person for that, and he says, I'm going to take my brother's or somebody else's weapon and deliver it to my brother, he possesses it in the interim. I would disagree. Think of it this way. When his dad and brother are in the car, and he's transporting them to the hunting grounds, is he in possession of the firearms at that time? I would think that's a totally different case, and you'd have a good argument. Your case has acknowledged that, because he's not the sole occupant of the premises. Right, because the reason is that someone else has that intent to exercise dominion and control. So once they're removed, why would his intent hinge on their presence or absence? It's in his mind. It doesn't depend on whether his brother and dad are in the vehicle for his intent. So he stops to get a drink, and somebody comes to seize the guns in the car and says, I'm going to take those. No, you can't. I'm transporting those. I don't possess them, so I'm not exercising control. I'm just transporting them. I don't understand that argument. He possesses them. He doesn't want anyone else to control them. He's in control of those weapons while he's transporting them. When they're just passengers in the car, and he knows they're in there with it, then he doesn't possess them. Well, that conflicts, because you said that he's in control of those weapons when he's transporting them. So that means he would be in control when he's transporting his dad, brother, and the weapons to the hunting ground. No. He would be transported. He is subject to their control of the weapon. He's the only person who has control over it when he's the only one in the car. I mean, that would be actual control we'd be talking about. That would be actual possession. If you say if you transport firearms, you're in control of those firearms, that's actual possession. If his brother's in the car with the gun, and the brother decides to toss it out the car, he doesn't care. He doesn't have any interest in controlling the weapon. So he didn't possess it on that trip. But when he's by himself, and his intent is to take it to his brother, and somebody tosses it out the car, he cares a great deal. I still think it hinges on... When do transportation and possession overlap in your mind? We'll say that the tractor-trailer hypothetical, where not only are these firearms entrusted to you, they're unlocked, and at the end of the trip your intent is to directly handle them and offload them. If you get picked up before that, and there's evidence that that's your intent, the intent has to exist simultaneously, but the direct control down the road is going to happen. You intend to sometime exercise that direct control. Then they overlap. I'm transporting this firearm, and it's mine, and when I get to my house I'm going to take it out of the car. That's constructive possession. You're not in actual possession of the firearm. I'm trying to think of drug cases when people are stopped on the highway, and they have illicit drugs in the car. They're charged with possession with intent to distribute, right? Even though they're mules who were just hired to take it from this place to the next place. So, oh, they're not guilty of possession with intent to distribute. They're guilty of transportation with something. Well, if the intent is intent to distribute, I mean, the intent is to be a mule. That's exactly what's happening here. I tried going down that avenue with research to see if I could find a similar possession case. I found one unpublished case. Well, what's wrong with the drug cases? Why is that not exactly what's happening here? No, I think it would be exactly the same. And aren't they generally charged, convicted, and the convictions affirmed for possession with intent to distribute? And that being the sole occupant of a vehicle is strong evidence, where the drugs are found is strong evidence. It's not conclusive proof that you had the intent at some time down the road to constructively possess those drugs. And it's key here that it can't be used as evidence because it requires an inference, and you can't overlook it. Recording in progress. You can't overlook Mr. Jackson's express statement. You're being recorded, you realize. We shouldn't. We shouldn't, don't we, too? Sorry. I always assume that's the case. You can't overlook his express statement at the rule of evancology that his only intent was to just drive them. His only intent was to distribute it to these people at the end. But, you know, I think you've got a really good argument on the second point. I'd like to hear your argument. Okay. I hate to do this to both of you gentlemen, but can I ask one other little question before we move on? Yes, you may. Thank you. Thank you, Judge Rogers. You were so nice. Do we apply under Moran the clear error standard to the acceptance of a factual basis? That's what she said. That's what I thought Moran said. I just want to be clear on the standard. Don't we apply Moran clear error? I think that's right. So it would just be whether it was clearly erroneous for the court to conclude that he had stated an intent to exercise dominion and control over these firearms. Okay. Turning to the second issue. Oh, do you have any? No. Okay. Go ahead. Turning to the second issue, Mr. Jackson's claimed error is that the district court did not correctly apply the categorical test when it determined that his previous conviction was a controlled substance offense. It doesn't seem that the government's pushing back on the idea that the court didn't correctly apply the categorical approach. So it seems that error has been established. The government's harmless error argument is that, well, if the court had applied the categorical approach, it would have done so not between the underlying conviction and the definition of a controlled substance. It would have compared the elements of the underlying Colorado conviction with 856, and that's wrong. The government relies on the commentary note, which applies in one limited circumstance, and that's when 856 is the instant offense of conviction. Then a court is permitted to look to the underlying facts of that instant offense and determine whether the offense facilitated is a controlled substance offense. Well, it's a syllogism. If 21 U.S.C. 856 is a subset that is fully encompassed within a controlled substance offense and that this Colorado 2006 conviction fits 856 by definition as logic, then it would also fit within the definition of a controlled substance offense. No, that's not right. The plain language of this commentary note applies only to 856. That's it. I mean, to use a hypothetical, say a basketball coach said, you can wear Adidas shoes only if you play for my team, and then provides an exception that says you can also wear Nikes if you can look closely at them and determine they're manufactured by the same plant as the Adidas. The government is trying to say, well, here's some Reeboks that we've looked closely at, so they fit into that exception. I think you're misinterpreting that application note. Have you looked at the history of it and why that application note was put in there? The application note was added solely for the language at the end of the application note, which requires that the underlying offense be a controlled substance offense. Implicit in that application note is that a violation of 856 can be one of the offenses described as a controlled substance offense. And if it can be a controlled substance offense, then why can't the Colorado statute also be a controlled substance offense? Because that's just not what the plain language of it says. It says, well, two reasons. First, the plain language just applies to 856. How does the plain language apply to 856? That's what it says. It says four offenses, four facilitated offenses, parenthetical, 21 USA and 856. Without the application note, just look at the black letter, the guideline language itself. 856. I'm saying if you look at the history of the application note and the language in the amendment explaining the purpose of that application note, adding that application note, it's implicit in that that the sentencing commission thought 856 fits the guidelines language. It then says, but, it does not apply, it's not a controlled substance offense, unless the underlying offense is a controlled substance offense. That was the only purpose of adding that. I would push that. Have you even looked at that history? Yeah, I think it's the inverse. You did look at the interest. Right, and it's the inverse, and it recognizes that at face value it doesn't qualify because it prohibits simple use. 856 includes use, which is not a controlled substance offense. If the underlying offense of conviction involves use. The statute is a whole, so if you were applying a categorical approach, you look at 856, it gets struck immediately because at face value, I'm sorry I'm out of time. You're going to be here for a little more. So at face value it gets struck because it includes use, and use is not a controlled substance offense. So why wouldn't that apply? Simi, you're right. Why would that not apply to the Colorado statute? Why wouldn't the same reasoning be that the Colorado statute, just like 856, satisfies the guideline language if the underlying offense is a controlled substance offense? Well, two reasons. First, I've said it before, and I don't want to repeat myself, but the language is cabinet 856. But second is it requires a look to the facts of the underlying conviction. And this Court has said you cannot do that when applying the categorical approach. So it would require this Court to either overrule or just directly violate its own precedent in order to apply the categorical approach, or in order to apply that commentary note here. But you're saying it's OK to do that under the categorical approach if it's an 856 violation? If it's the instant offense. This Court has approved looking to the underlying facts when it's the instant offense being charged. And that's when this commentary note applies. It's since those facts are already presented to a court. The application note with respect to 856, it's not applicable when you're looking at prior offense to see if there should be... No, and the note makes that clear. It says instant offense right in the language of the note. And this Court, it would violate this Court's precedent to look at anything beyond the Shepard document. You couldn't look at the facts of the underlying offense. The only time that's appropriate is when the offense that's challenged as a controlled substance offense is the instant offense. The language of the application note says, maintaining any place for the purpose of facilitating a drug offense, parentheses, 21-856, close parent, is a controlled substance offense if the offense of conviction establishes that the underlying offense, the offense facilitated, was a controlled substance offense. It seems to me that application note applies in determining whether a prior conviction was for a controlled substance offense. Where does it say the instant offense? It absolutely could, because this Court is barred from looking at the facts of the underlying offense. OK, but you said the language says... Offense of conviction is what I was thinking. The offense of conviction, which is the prior... Which is Day 56 conviction. Right, but that's a prior conviction. I don't think you can say that, because to say that... I mean, here's how it plays out. Why would that apply? Determining whether someone's a career offender, you have to determine whether the instant offense is a controlled substance offense. And that's what this commentary note is guiding you to. What is 4B1.2? Its purpose is in determining whether a prior offense can be considered a controlled substance offense or a crime of violence. Am I correct? Both prior and instant offense is a controlled substance offense. You're making a lot of... That's an interesting point, but I don't... Can't you tell in a Day 56 charge what the underlying offense was? I think in a lot of instances... You have to say maintenance of... Well, I guess how would that play out here? You're limited to the Sheppard documents. So if we agree that this applies in some way to 1818.406, what do you look at to determine what the underlying offense was? There's nothing. The government hasn't proven any facts for this case. So for them to win on harmless error, they would have to point to something that... Except in everything you said is true, they would have to point to something showing that the underlying offense was a controlled substance. You know, you're raising a different point. And let me try to get the case. But this particular guideline... I'll put it this way. The categorical approach does not apply to this guideline. You're saying it does? Yes, the categorical approach always applies to the guideline. No, it doesn't. We would be expanding the guidelines. No. The categorical approach applies when the guideline defines an offense and describes an offense, such as burglary or something like that. Let me find that Supreme Court decision. Give me a moment here. Because I think you're ignoring a fairly recent Supreme Court decision, and I've forgotten the name. But in very similar circumstances... Hold on. This is important. What's the name of the case? Shular. S-H? S-H-U-L-A-R. Yes, Shular. And there the Supreme Court said, if you're talking about something that's an offense, that's a crime, like burglary, then you use the categorical approach. If it's talking about something like manufacturing, the sort of language in this guideline, you do not use the categorical approach. You just look at the... Are you familiar with that? I'm not. I'd be happy to follow 28J, but I mean, this Court... Oh, it's right here. Yeah. This Court said time and again that when a definition applies, the controlled substance definition, you apply a categorical approach to the elements of the underlying offense to that definition. It doesn't matter what the statute's title. Certainly not. The state statute could cover manufacturing, but it could have a different title. That's what Faulkner said. But it's still a categorical approach between the elements. This is an opinion by Justice Ginsburg involving the ACCA, the Armed Crew Criminal Act. The language in the statute that was relevant there is, a state offense ranks as a serious drug offense only if it involves manufacturing, distributing, or processing. I'm sorry, that's not the right language I'm looking at. Maybe we should just leave it at, the parties should address this in supplemental briefing. It wouldn't be a 28J letter because it's not a new case. Schuller, it's 140 Supreme Court Reporter 779. It's a 2020 opinion. And I think if you read that, you won't come to the conclusion that a categorical approach is not appropriate for the language of this guideline. But I'm not sure that destroys your argument. I don't think it does for the reason that I'm saying. No, no. Well, I don't think it destroys your conclusion. It may eliminate your argument. Because there's a question here about what the mens rea requirement for the Colorado statute is versus the mens rea for 856. And would you, just for direction, where would you like a supplemental brief on this? Or would the court enter in order directing the supplemental brief? I think you're going to need to address Schuller to see whether the categorical approach applies here. And then you're going to need to see how you would apply the proper approach in this case. And it's going to depend, I think, on the mens rea requirements for 856 and the Colorado statute. Let me ask you, have you explored at all what the mens rea requirement is for the Colorado statute? I have not. No. What about for 856? No. I assume it's knowingly for both, but I don't know. Well, they both require knowingly. The question is whether they require anything more. You know that your property is being used for something. The question is whether you want it to be used for that. You intended that. Or you're just saying, you can do it. I don't care whether you succeed or not. I wouldn't want to mention an answer without being seen. Okay. But I'd be happy to brief it. Well, we've taken a turn here. I'm not sure what we can do at this point. But does anyone have questions? I think he's asking how long do you want to give him? Oh, how long for? Why don't we conference on that? We'll wait for that. We'll let you know. It won't be delayed long. Okay. Thanks. Let's stick with the first issue at least. Can you please report? Stephanie Sprecher representing the United States Attorney's Office for the District of Wyoming. Defense counsel on three occasions encouraged the court to rely on her client's factual basis in order to accept his guilty plea. When she did that, she invited the error that he is now complaining about. When you invite the error, you necessarily result in a waiver of that right to appeal that issue. And our position is that the court should not review that issue. Let me ask you about invited error. And I will tell you candidly, I think you have a very strong argument on invited error. Not because of the absence of an objection, but because defense counsel affirmatively said on the colloquy that we're addressing that I think it's sufficient. The problem is that for appellants, criminal defendants that are situated as appellants, we have said time and time and time again, appellant, if you provide an argument, a distinct argument in a footnote that that, and we have precedents that say that, that is perfunctory, it's not fair to the adversary. Now, Mr. Smith is obviously an excellent attorney and reads the footnotes and addressed it in his reply. But is it really fair for the government, even though it is the appellee, to say that you relegated that to a footnote and that we're going to rely on that footnote as a distinct basis not to even entertain this challenge on factual basis? Isn't that inequitable and unfair to do that for the government when we have almost never do that for appellants? I don't know that I can answer what you normally do for appellants or what you do for appellees. I don't know. Right. I apologize. That's all right. What I do know is that routinely courts put in footnotes holdings, opinion about how something should have occurred or how something should be ruled on, which isn't in the body. I also agree that I put this in a footnote and I could have put it up in the body in one paragraph saying the same thing, but it isn't a perfunctory footnote. It's not just a perfunctory reference to they waived this anyway, so let's not talk about it. I briefed it in any event. What I said was that I cited what happened. I cited to the record. I cited case law that said what it meant to waive an argument, and I said, therefore, it should be waived. And so it wasn't a perfunctory footnote, but I do appreciate that, yes, it would have been more fair to put it in the body of the argument so that defense counsel would be aware of it. But that aside, I want to go to the second point, which is reviewing on plain error, whether or not Judge Johnson erred in taking the factual basis in this case. And there's two areas that we can look at in the factual basis. The first is was the factual basis sufficient that the client was too costly, and then if for some reason you find that there was error and it was not, then you can look through the entire record to see if that sentencing there was sufficient evidence to support it. Is that for purposes of prong three of plain error? No. So for purposes of prong two? Yes. Because, you know, and maybe this is just academic because nobody questions this, but, you know, a district judge obviously doesn't have the pre-sentence report at the time that he or she is called upon to adjudicate the defendant guilty by accepting a guilty plea. So all of this extraordinary bits of evidence about, you know, that really comes into play on the obstruction of justice enhancement, obviously none of that was before the district judge at the time he or she accepted it. So are you saying that it comes into play even at prong one or prong two in determining whether there was an error or even an obvious error when the judge wouldn't have been privy to any of that evidence in the PSR, et cetera? If I understand your question correctly, is if it's error, whether there was plain obvious or whether there was an effect on substantial rights, you're asking me does it come into play in one and two? I'm just asking all of the evidence that is not at that colloquy. Mr. Smith is, you know, focusing primarily in his opening brief, not exclusively, on the colloquy where the defense counsel was asking the plaintiff about the intent element. And then you, I think appropriately, point out that, well, we are now, because we're talking about plain error, we're called upon to talk about the entirety of the record, even evidence that is eventually elicited in connection with the objection on the PSR to the obstruction enhancement. I'm just wondering, to the extent that we are considering evidence post-colloquy for the acceptance of the guilty plea, does that come into play at prong one or prong two, or does that come into play only in terms of prong three with the predicate that, well, even if the colloquy was insufficient, the defendant would have known that if he had objected to the factual basis, he or she still would have pleaded guilty and had an adequate factual basis because he or she would have known that all of this other information that was eventually elicited. I believe it comes into play in prong two and three. Because prong one is, excuse me. I just said okay. Okay. In this particular situation, there was plenty of evidence to support the plea of guilty just at the colloquy. And you pointed out previously what it was that the prosecutor, I think what the prosecutor said, which was, no, excuse me, what the defendant said, which was in a question put to him by his defense counsel, so at that point you intentionally possessed the firearms to bring them back to your dad and brother. And he said yes. And that's all the judge needed at that point. And, yes, he had resisted laying that factual basis up to that point, but that's when he knew what it was that was being asked of him and that's when he said affirmatively, yes, I possessed them with intent to exercise dominion and control over them. And then if you look at the record, let's say for any reason you decide that there was error in the judge accepting that plea colloquy, when you look at the record, the record is overwhelmingly in favor of the sufficiency of that factual basis and the fact that the defendant was guilty of the offense. And I don't think I need to hash out what it was that was in there unless the court has any questions about that. Okay. Then we go to the prong three, whether it affected his substantial rights, which is what the court was asking about. In this case, the defendant said it affected his substantial rights because he would have gone to trial. Well, if you look back at the record, he wasn't going to trial. He made a strategic choice to plead guilty to separate all this mess that was involved with possessing these two Vanellis with the possession of the pistol, which he was on trial for at the same time, because there wasn't as much mess and circumstantial evidence to show that he was in possession of that pistol. So he purposely made that decision, and the judge recognized that at his sentencing, that that was a strategic decision, and that's why he did it. I don't want to blabber this, because I think it's maybe an academic question, but it's just something that has bothered me about prong three in this context. I think you cite an Eighth Circuit opinion that does talk about the reasonable probability that the defendant would have pleaded not guilty, had he or she not known that the factual basis was insufficient. And then you go on to say, had it been explained to the defendant that this would, or Mr. Smith makes this argument, had it been explained to the defendant that there was this little and Henderson required intent. But what bothers me about that whole debate is the error here is not the failure to inform the defendant of the elements. It has nothing to do with the disclosure of the defendant at the arraignment. The problem is in the factual basis. And so I'm not really sure logically why it would even matter at prong three if the defendant would or would not have pleaded guilty, or not guilty, if the factual basis had been sufficient. The question seems logically, in this context, of whether or not there would have been an adequate factual basis had the district court not prematurely terminated the colloquy. So I'm not sure logically, my question is logically, why does it really matter whether the defendant would or would not have pleaded guilty or not guilty at prong three if the error was about what the district judge does except in the guilty plea based on the factual basis. Do you understand my question? I do understand your question. I don't know that I have a good answer for that. It matters what the district court judge does in accepting the guilty plea if the defendant is unaware of what it is that the government has to prove. And I think that was argued by the defense, and I agree with that. And in this particular case, the defendant knew what the government had to prove. And the defense counsel knew, the government knew, and the judge knew. So I think our circumstances were that everybody knew, and I don't know that we can reach to the point where the judge did anything wrong. Okay. Does that quite answer your question? Well, that's okay. I was just curious about it. Thank you. All right. Next we get to whether or not it was an error for the judge to count the 2006 marijuana premises conviction as a controlled substance conviction when determining his application at 2K2.1 and 4B1.2. When this defendant was sentenced, it was two months prior to the Jones decision coming out. And during the sentencing, the AUSA was arguing that the court should not take a narrow view of the guidelines and should include 856 and the Colorado statute as controlled substance offenses. And the reason being that you shouldn't so narrowly construe the guidelines or construe the law that it just doesn't make any sense, and then you eliminate all possibilities of punishment. When the Jones case came out, it said ignoring prior state felony convictions in sentencing flouts Congress's intent that the sentencing guidelines prescribe an enhanced sentence for the defendant with a federal, state, or local felony conviction. And in this case, the judge found that that was the case. When we started briefing the issue, it became apparent that there was this footnote that nobody mentioned to the court when the court was trying to evaluate whether or not 856 was a controlled substance offense and then necessarily whether or not the Colorado statute fit underneath that. But since then, and you can see in the brief, it appears, and I agree, that the footnote to the commentary of 4B1.2, excuse me, not the footnote, the commentary to 4B1.2, clearly says that 856 is a controlled substance offense if the underlying offense is a controlled substance offense. That's a big if. It's a big if. So, now, in 856, it includes manufacturing, distribution, export, dispensation of a controlled substance. If the statute of conviction includes those things or the use of the controlled substance, right? Correct. Now, the 2006 Colorado statute criminalized the cultivation of marijuana. A lot of people cultivate marijuana not to manufacture it, to distribute it, but to smoke it. And so, in Moncrief v. Holder, isn't the least criminalized version of conduct that would have constituted a violation of the 2006 Colorado statute, the cultivation of marijuana so that whoever was growing that marijuana could consume it. There's nothing in that 2006 statute that suggests, much less says, that you are criminalized if you cultivate, if you provide your land for the cultivation of marijuana in order to distribute it. And so, let's say you're totally right that you can compare it to 856. I think you lose under 856 because 856 has this big if that you just alluded to if the underlying statute of conviction is a controlled substance offense and this is not a controlled substance offense under the least criminalized version of what could constitute a violation of the Colorado statute. I think you're right. So, if we do compare to 856, you lose, right? I think if you say that you use a categorical approach to analyze 856 against the Colorado statute, I don't see that attempt. I appreciate your point. And it didn't occur to me until Judge Hartz was asking about it. And so, it's not briefed. If possible, it would be possible for me to brief and reply to the court about that issue. Well, let's discuss this. Yeah, let's do that. First of all, I'm pretty confident that we don't apply the categorical approach to this guideline. Cultivation of marijuana comes within the definition of manufacturing a controlled substance, does it not? It does. The problem is with the guideline language, how does the Colorado statute fit within the guideline language? Because it's not... Because the Colorado statute makes it a crime to permit someone to manufacture marijuana. Why is that... Why does that come within the guideline? Why does a violation of the Colorado statute come within the guideline? Because we don't know whether someone in the Colorado case... Someone convicted of the Colorado statute is actually manufacturing it himself or herself. It would only be a violation... Well, it would only come under the guideline if it were aiding and abetting the manufacturer. And the question then becomes, I think, is every violation of the Colorado statute at least the offense of aiding or abetting the manufacturer? Or a conspiracy. Yeah. And that's why I was asking about the mens rea for the Colorado statute. Right, because you have to show the intent. And that may be different from 856. 856 has different language that could be interpreted to mean that when you have a facility... When you maintain a place where marijuana is cultivated, you have to intend that marijuana be cultivated. It could be read that way. It could be read that way. And so... The argument comes back to what I argued at sentencing, which is really narrowing the application of what the guidelines are intended to do and what Jones is intended to do, which is to punish recidivist behavior. And recidivist behavior would be no different in maintaining a facility to manufacture marijuana than it would be to maintain a facility to manufacture any other controlled substance under the Colorado statute. I understand... I think it was George Baccarat that talked about it's possible that a person might want to just grow, cultivate marijuana for their own personal use. And the argument, I think, was made at sentencing that... Well, does that matter? Aren't you guilty of manufacturing a controlled substance if you cultivate marijuana, even if it's for personal use? But the offensive conviction would allow a conviction predicated on the manufacturer, but the offensive conviction would be the cultivation of property for personal use. I think that's the problem. But it doesn't actually say it's for personal use. It just says using the property to do those things. Well, 856, both the first and subsections do include the offensive conviction for a number of things, including the use of the controlled substance. Correct. Right. And that would punish something more than, or in your hypothetical scenario, equal to what the Colorado statute would penalize. And so they could do the same. But it's such a narrow reading of the statute and the application of the guideline that when you get into this philosophizing about what could happen, what could be the least thing that could happen, there's much commentary in the Supreme Court case law and even in this court's case law that says let's not get beyond imagination and get too crazy with what we're doing when we're assessing whether something is or is not a controlled substance offense. Or, for example, a violent crime. We just get too far through. And I think if we just take the literal meaning of what that statute is and what it criminalizes, which is to manufacture, it is a controlled substance offense under the guidelines. I don't recall this happening before, but since you made a concession about 856 today, since there's been no briefing and no recognition of the Shuler opinion, which I think probably changes in large part the way you analyze this guideline, do you think there's any virtue in counsel for the parties conferring with each other and seeing if there's common ground in this case? Sure. Yes, sir. And then maybe you can decide what you differ on and brief us on that. Yes, sir. Rather than us ordering it and perhaps confusing things much more. Yes, sir. You're both very good attorneys. Absolutely. This is really helpful. And I can't order it, I don't think. But it might clarify things a lot because this case has been pursued, I think, on some misunderstandings by everybody. And it may be, if you look at it, you say, yeah, we can't enhance this sentence on this ground. Or you may say, gee, this isn't the categorical approach and it fits manufacture because there was cultivation, which is manufacture. And if you look at Shuler, I think it will give you some guidance. Maybe I'm totally misreading Shuler, but I don't think so. Just a little misreading perhaps, but not totally. So why don't you report to us in, would 10 days be enough time to see whether you two can decide what needs to be briefed? Yes, sir. OK. Or if you all have resolved the case. There's still another issue. I don't think they're going to agree on the possession issue. You never know. I am out of time. I wanted to at least address that last issue very briefly. I'm not sure what. The hemp issue. Oh, OK. Go ahead. Yes, sir. I think that the court really should review this for plain error. And that the court has said, this court has said, that when there is not clear Supreme Court guidance, when there's not guidance within our circuit here, the Tenth Circuit, and there is conflicting circuit opinions, that the error cannot be plain. Well, we do have to say that about a circuit split. But here it's a 5-1 circuit split. It's a 5-1 circuit split. But who's to say that the Eighth Circuit isn't the right circuit? And it's clear at this point that at the time of sentencing and even now, there is dispute about if McNeil should be applied or not apply. And at the time that the judge was sentencing and the time now, there's so much confusion that it couldn't be plain and obvious error. So I'd like you to consider that in evaluating whether or not McNeil applied or not. If that comes up, yes. Thank you. I hesitate to do this, but I think you're entitled to a minute and a half. You don't have to take the time if you think you're just going to be entering a tar pit, but go ahead. There's really only one thing I wanted to clean up, leaving the second issue aside, is that it seems to have some work to be done on it. As to the first issue and your question, Judge Backrack, I think Carrillo controls and then it says that the scan of the entire record is only for the third prompt of the plain error review. This court's precedent already says that. And the confusion is my fault. I screwed it up in the opening brief. I tried to correct that in the reply and lay out how the analysis should properly go. Okay. You know, you did add that footnote and now I understand it. Thank you very much. Can I ask you something in your 54 seconds left? So on the categorical approach to 4B1.2, manufacturer, and this has to do with, it's not a Supreme Court opinion. It's one of ours. It's the Cornelio Pena case that was talking about solicitation. And so there you had an application note that used the word includes. So when something includes X, Y, and Z, it incorporated the notion of what is substantially similar to one of the illustrations. Like what is substantially similar to aiding and abetting or conspiracy. Now, in this case, we do have precedents that say, by definition, cultivation is a subset of manufacturing. Okay. And so you do have cultivation of marijuana. And in the Colorado statute, that, by definition, under our precedent, is manufacturing. Okay. And so why doesn't that, if it's substantially, well, let me back up. Allowance of the property to cultivate marijuana. How can you allow property to be used for cultivation without agreeing to the cultivation of marijuana? And if you are, and if the answer is you always will, then you have a conspiracy, by definition, to manufacture a controlled substance, marijuana. So why isn't, if we do buy into the notion, under this Cornelio Pena case of ours, why isn't the application note for conspiracy rating and abetting substantially similar to a statute that allows the cultivation, i.e., the agreement to manufacture a controlled substance? Yes. So I mean, to start, you're right with the Moncrief v. Holder, that you look at the least of the acts criminalized under the statute. And the government's argument about these fanciful hypotheticals, the Supreme Court recently shut that down, I think, in Taylor, that said no matter how far-fetched a hypothetical, if it's covered by the plain language of the statute, that's the least of the acts criminalized. Right. But that isn't 4B1.2. I mean, now I'm not talking about 856. Yeah, well, I guess I was going to refer back to 1818-406, the actual statute that's at issue here, which says that being a joint occupant of land, so you and I both live on this farmstead, all I have to do is know that you're growing marijuana and not report it. And that's criminalized under this Colorado statute. That's not substantially similar to the shared intent or the overt act that are contained in conspiracy or aiding or abetting or intent. Okay, I understand your argument, but wouldn't you concede or do you concede that it at least allows the agreement to use that property to manufacture the controlled substance? No, I wouldn't agree to that. It just has to require the knowledge that someone else. I thought you said you hadn't looked into it. I asked you about Mantraya and you said you hadn't looked into it. Now you're opining on the Mantraya. This is all in the opening brief. I was just confused, honestly, to your question. I can't believe you could have been confused by my question. We'll take judicial notice. That was a reasonable thing to be confused about. No further questions. But I'm hoping you two will straighten this out. And you can pursue that. If there's further briefing, you'll have an opportunity to pursue what Judge Bacharach is asking about. Case is submitted. Counsel are excused.